UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS GALLARDO-PINEDO<br><br>Plaintiff,<br><br>v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>Defendant. | No. 1:23-cv-01435-KES-CDB<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Doc. 24 |

Plaintiff Jose Luis Gallardo-Pinedo ("Gallardo-Pinedo") brings this action against defendant Aegis Security Insurance Company ("Aegis"), alleging Aegis breached its duty of good faith and fair dealing to its insured by failing to timely settle with Gallardo-Pinedo. Doc. 7. Gallardo-Pinedo pursues the present claim against Aegis as the assignee of Aegis's insured. Aegis moves for summary judgment. Doc. 24. Gallardo-Pinedo filed an opposition, Doc. 29, and Aegis filed a reply, Doc. 30. For the reasons stated below, Aegis's motion for summary judgment is granted.

**I.  Background**

The record, viewed in the light most favorable to Gallardo-Pinedo, shows the following: On November 11, 2017, Gallardo-Pinedo was walking in the roadway when Salvador Mancilla Paz ("Paz") struck him with his vehicle. Doc. 29-2, Aegis's Statement of Undisputed Facts and

1

Gallardo-Pinedo's Response ("SUF") No. 1. Gallardo-Pinedo was taken to the hospital, where he was diagnosed with a major skull fracture. Doc. 30-2, Gallardo-Pinedo's Additional Material Facts and Aegis's Response ("AMF") No. 12. At the time of the accident, Paz was insured under an Aegis automobile policy with a bodily injury liability limit of $15,000. SUF No. 2. While Gallardo-Pinedo was still at the hospital, his mother, Cecilia Pinedo, applied for and obtained Medi-Cal insurance on his behalf. *Id.* No. 3. Medi-Cal paid for all but $100 of Gallardo-Pinedo's medical treatment related to the accident. *Id.* No. 5.

On November 22, 2017, Paz's son reported the accident to Aegis. *Id.* No. 6. Aegis opened a bodily injury claim and began investigating. *Id.* No. 7. Within one week of being notified of the accident, Aegis ordered a copy of the California Highway Patrol ("CHP") report, sent Paz a letter asking for a recorded statement, and determined Gallardo-Pinedo's address through an insurance database. *Id.* On November 24, 2017, Aegis assigned a claim adjuster, David Horan ("Horan"), to the file and verified that Paz had $15,000 in bodily injury coverage. AMF No. 2. That same day, Aegis sent a form letter to Gallardo-Pinedo, requesting that Gallardo-Pinedo contact Aegis to provide a recorded statement, or complete and return a form detailing the accident. SUF No. 8; Doc. 24-6 at 43–44. Gallardo-Pinedo did not return the requested form or otherwise respond to the letter. SUF No. 8. On December 15, 2017, Paz sent Aegis an accident report, stating that Paz struck Gallardo-Pinedo while driving 35 miles per hour, that the accident damaged the van's passenger mirror and windshield, and that Gallardo-Pinedo was facing the opposite direction when Paz struck him. *Id.* No. 9; Doc. 24-6 at 45–46.

On January 5, 2018, Aegis reviewed a collision report prepared by the CHP, dated November 30, 2017, that stated Gallardo-Pinedo had suffered a major skull fracture, that the CHP discovered a pool of blood on the road, and that Paz told the officers in an interview that "what he did was wrong." SUF No. 10. The report also stated that, while Paz caused the collision, an associated factor of Gallardo-Pinedo's injuries was that Gallardo-Pinedo walked in the roadway without "due care." SUF No. 10; Doc. 24-6 at 49–61. Upon reviewing the collision report on January 5, 2018, Aegis determined that, "due to nature of [the] injury, appears $15k [policy limit]," and its claims manager, David Purcell ("Purcell") instructed Horan to "contact

[claimant] and make 15k offer."  SUF No. 10; Doc. 24-6 at 37.  That same day, Aegis resent to Gallardo-Pinedo the form letter it had originally sent him on November 24, 2017, requesting information pertaining to the accident.  SUF No. 10; Doc. 24-6 at 47–48.  Gallardo-Pinedo again did not respond to the letter.  SUF No. 10.  On January 31, 2018, and March 1, 2018, Aegis sent letters to Gallardo-Pinedo requesting documentation of his medical expenses and stating that additional time was needed to resolve his claim due to Aegis's lack of such documentation.  *Id.* No. 11; Doc. 24-6 at 63, 67.  Gallardo-Pinedo did not respond to either letter.  SUF No. 11.

On January 31, 2018, Aegis sent a letter to Paz, notifying him that, upon reviewing the police report, Paz appeared to be responsible for Gallardo-Pinedo's injuries and Gallardo-Pinedo's claim exposure might be "in excess of policy limits."  *Id.* No. 13; Doc. 24-6 at 64–66.  Aegis further stated that it would "make every effort to settle."  SUF No. 13.  In the letter, Aegis requested that Paz complete: (1) a release form allowing his policy limit to be disclosed to Gallardo-Pinedo and (2) a proposed declaration for Paz to sign confirming that he had no other insurance and was not in the course and scope of employment at the time of the accident.  *Id.*  Paz did not respond to the letter or complete either of the proposed forms.  *Id.*  On February 8, 2018, Purcell entered a note on the claim log to contact Gallardo-Pinedo or a family member and "get offer out."  AMF No. 19.

On February 21, 2018, Cecilia Pinedo, Gallardo-Pinedo's mother, retained Quirk Law Firm ("Quirk") to represent him.  SUF No. 14.  On March 1, 2018, Aegis's claims supervisor entered a note on the claim log to consider sending an independent adjuster to Gallardo-Pinedo's home "in order to advise of our offer and attempt settlement."  AMF No. 20; Doc. 24-6 at 36.  Aegis did not ultimately send an adjuster to Gallardo-Pinedo's home.  AMF No. 20.  On March 21, 2018, Aegis received a letter from Quirk stating that Quirk represented Gallardo-Pinedo and that Cecilia Pinedo was Gallardo-Pinedo's designated representative.  SUF No. 15; Doc. 24-6 at 68–73.  That same day, Aegis sent a response letter to Quirk asking for information on the accident and for any medical bills or documentation that could verify Gallardo-Pinedo's injuries.  SUF No. 16; Doc. 24-6 at 74–75.  Quirk did not respond to the letter.  SUF No. 16.

On April 5, 2018, Aegis sent another letter to Quirk requesting documentation of

3

Gallardo-Pinedo's medical expenses and stating that additional time was needed to resolve his claim due to Aegis's lack of such documentation. SUF No. 17; Doc. 24-6 at 82. That same day, Quirk sent a letter to Aegis stating that it no longer represented Gallardo-Pinedo and that Aegis should contact Gallardo-Pinedo directly. SUF No. 18; Doc. 24-6 at 83. Quirk's letter did not provide the requested medical documentation or any contact information for Gallardo-Pinedo. SUF No. 18.

On April 25, 2018, Cecilia Pinedo mailed a letter to Aegis but addressed it to the wrong zip code. AMF No. 28; Doc. 24-6 at 92–94. There is no evidence that Aegis received this letter until Cecilia Pinedo faxed it to Aegis on August 28, 2018.[1] Doc. 24-6 at 84; SUF No. 33. Cecilia Pinedo's letter made several requests: First, she wanted information on the car Paz was driving at the time of the accident and whether Paz was driving for work at the time. Doc. 24-6 at 92–94. Second, she requested a copy of Paz's insurance policy and his policy limit. *Id.* Third, she offered to settle with Aegis only if Aegis sent a check for the maximum amount possible under Paz's insurance and listed only Gallardo-Pinedo's name on the check. *Id.* In the letter, Cecilia Pinedo gave Aegis fifteen days to respond in writing and asked Aegis to "not call me or my son." *Id.*

On May 2, 2018, without having received any medical records or bills, or any Medi-Cal information, Aegis sent a letter to Gallardo-Pinedo offering its $15,000 policy limit to resolve his claim in exchange for a release of Aegis's insured. AMF No. 24; Doc. 24-6 at 84.

On July 2, 2018, Aegis received a letter from Cecilia Pinedo dated June 26, 2018. SUF No. 22; Doc. 24-6 at 85–87. The letter acknowledged Pinedo's receipt of Aegis's May 2, 2018 letter offering the $15,000 policy limit but asked why Aegis had not responded to the other requests for information or demands in her April 25, 2018 letter. Doc. 24-6 at 85–87. Cecilia

---

[1] Aegis asserts it did not receive Cecilia Pinedo's April 25, 2018 letter. SUF No. 27. Aegis points to the incorrect zip code listed on the destination address and attaches a copy of its claim log, which does not document receipt of an April 25, 2018 letter. *Id.*; AMF No. 28; Doc. 24-6 at 35–36. Gallardo-Pinedo points to Cecilia Pinedo's deposition stating that she personally mailed the letter at the post office and had Aegis's correct post office box number on the letter. SUF No. 27; Doc. 29-1 at 143–44. Gallardo-Pinedo does not dispute that the letter was addressed to the wrong zip code.

4

Pinedo's June 26, 2018 letter also stated that "the time for [Aegis] to respond is over" and instructed Aegis to communicate with her only in writing. *Id.*  On July 2, 2018, Aegis sent Cecilia Pinedo a letter attaching: (1) a copy of Paz's policy, which confirmed the $15,000 policy limit and identified the vehicle he was driving at the time of the accident, and (2) a proposed bodily injury release to sign and return.  SUF No. 24; Doc. 24-6 at 88–90.  On July 12, 2018, Cecilia Pinedo faxed Aegis a letter stating that neither of the two attachments Aegis referenced were enclosed with its July 2, 2018 letter.  SUF No. 32; Doc. 24-6 at 96–98.  She stated that Aegis had "five days to respond from the date of [her] letter."  *Id.*  On August 6, 2018, Cecilia Pinedo faxed another letter to Aegis, dated August 3, 2018, stating she sent Aegis a letter on July 12, 2018, to which it never responded.  SUF No. 33; Doc. 24-6 at 99–100.  She attached a copy of the faxed July 12 letter and stated that she was hiring a lawyer.  SUF No. 33.

On August 28, 2018, Aegis received another letter from Cecilia Pinedo, which attached copies of her April 25, July 12, and August 3, 2018 letters.  SUF No. 25; Doc. 24-6 at 91.  Her August 28 letter stated: "I sent you these letters. I know you got them. You have five days to tell me why you never responded."  Doc. 24-6 at 91.  The top of the letter included the relevant claim number.[2]  *Id.*  On August 30, 2018, Aegis sent a letter to Gallardo-Pinedo in response to the August 28, 2018 letter.  SUF No. 34;  Doc. 24-6 at 101–02.  The letter reiterated that it had offered its $15,000 policy limit to Gallardo-Pinedo on May 2, 2018, and it attached a copy of the bodily injury release form.  Doc. 24-6 at 101–02.  The letter also explained that it was still awaiting receipt of Paz's declarations regarding any other insurance and whether he was working during the time of the accident.  *Id.*  Aegis asked Gallardo-Pinedo to confirm in writing that Medi-Cal had not paid for any of his medical treatment because "Medi-Cal and Medicare have

---

[2] Aegis asserts that, prior to receiving Cecilia Pinedo's August 28, 2018 letter, its claim handlers had not received the July 12, 2018 or August 3, 2018 letters.  SUF No. 26.  Aegis acknowledges both letters were delivered to its mail room.  *Id.* No. 28.  However, Aegis states they could not be forwarded to any claim handler because they did not contain any identifying information such as the claim number, Gallardo-Pinedo's full name, or the date of loss.  *Id.*  It was not until Aegis received the August 28, 2018 letter, which specifically referenced the claim number and which included the three prior letters as attachments, that Aegis determined the claim to which the July 12 and August 3 letters related.  *Id.* No. 29.

statutory liens that [Aegis is] obligated to protect." *Id*. Neither Gallardo-Pinedo nor Cecilia Pinedo responded to the August 30, 2018 letter. SUF No. 34.

On October 19, 2018, Aegis sent Gallardo-Pinedo a letter stating that it was still awaiting receipt of Paz's declaration and still needed to rule out any Medi-Cal lien. SUF No. 40; Doc. 24-6 at 105. The letter also asked Gallardo-Pinedo to provide any Medi-Cal number. Doc. 24-6 at 105. Neither Cecilia Pinedo nor Gallardo-Pinedo responded to this letter. SUF No. 40. On October 29, 2018, Aegis received a signed declaration from Paz stating that he had no additional insurance and was not working at the time of the accident. SUF No. 41; Doc. 24-6 at 106–108. That same day, Aegis sent Gallardo-Pinedo a letter providing a copy of Paz's signed declaration and reiterated that it was still awaiting information from Gallardo-Pinedo on any Medi-Cal lien. SUF No. 42; Doc. 24-6 at 109. Neither Cecilia Pinedo nor Gallardo-Pinedo responded to this letter. SUF No. 42.

Between December 2018 and May 2019, Aegis sent six letters to Gallardo-Pinedo stating that it was still awaiting Gallardo-Pinedo's signed bodily injury release (accepting the $15,000 policy limit and releasing Aegis and its insured of all liability) and information on any Medi-Cal lien. SUF No. 43; Doc. 24-6 at 110–15. Neither Cecilia Pinedo nor Gallardo-Pinedo responded to any of the letters. SUF No. 43. In June 2019, Gallardo-Pinedo filed a personal injury suit against Paz. *Id.* No. 44. Aegis continued to make Paz's policy limit available to Gallardo-Pinedo to settle his claims with Paz, but Gallardo-Pinedo did not accept the offer. *Id.* No. 46. On June 6, 2023, Aegis and Gallardo-Pinedo entered into an agreement that: (1) Gallardo-Pinedo would release all of his claims against Paz and dismiss his lawsuit, with prejudice, (2) the parties would stipulate that the value of Gallardo-Pinedo's released claims was $4 million; and (3) Paz would assign Gallardo-Pinedo his bad faith failure to settle claim for Gallardo-Pinedo to seek to recover the $4 million stipulated value. *Id.* No. 47. After entering into this agreement, Aegis paid Gallardo-Pinedo its $15,000 policy limit. *Id.* No. 48. This lawsuit proceeds on the bad faith failure to settle claim. *Id.*

///

///

## II. **Legal Standard**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The parties must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The Court then views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). However, the nonmoving party's version of the facts need not be credited if it is blatantly contradicted by the evidence. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If "the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984.

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses and "establish that there is a genuine issue of material fact." *Matsushita*, 475 U.S. at 585. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586 (citation omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to survive summary judgment. *Anderson*, 477 U.S. at 252.

In the endeavor to establish the existence of a factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

7

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 252 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

### III. Discussion and Analysis

Aegis moves for summary judgment on Gallardo-Pinedo's assigned claim for Aegis's alleged breach of its duty of good faith and fair dealing to Paz. California law implies a covenant of good faith and fair dealing. This implied covenant covers the duty to settle within policy limits "when there is substantial likelihood of recovery in excess of those limits." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 401 (2000).

> Where there is a substantial risk of an insured's exposure in excess of the policy limits, the interests of the insurer and the insured diverge. In that circumstance, the insurer could choose not to settle and instead go to trial knowing that it would be liable only for the policy limits, exposing the insured to the risk of paying the excess judgment. To ameliorate this conflict of interests, the covenant of good faith and fair dealing requires the carrier to consider in good faith the interests of the assured equally with its own and evaluate settlement offers within policy limits as though it alone carried the entire risk of loss.

*Yan Fang Du v. Allstate Ins. Co.*, 681 F.3d 1118, 1123 (9th Cir. 2012) (amended and superseded on other grounds).

In evaluating whether an insurer acted in bad faith, "the critical issue is the reasonableness of the insurer's conduct under the facts of the particular case." *Pinto v. Farmers*

8

*Ins. Exch.*, 61 Cal. App. 5th 676, 688 (2021) (cleaned up) (internal citations omitted).  Although typically a question for the jury, the reasonableness of an insurer's conduct is a question of law where "evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Id.* at 689 (quoting *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001)).  Bad faith liability may attach when a "claimant clearly conveys to the insurer an interest in discussing settlement but the insurer ignores the opportunity to explore settlement possibilities to the insured's detriment, or when an insurer has an arbitrary rule or engages in other conduct that prevents settlement opportunities from arising." *Reid v. Mercury Ins. Co.*, 220 Cal. App. 4th 262, 278 (2013).

No evidence suggests that Aegis engaged in conduct to prevent a settlement opportunity from arising.  Gallardo-Pinedo cites the undisputed evidence that just weeks after the accident, on January 5, 2018, Aegis management made notes in its claim log that Gallardo-Pinedo's claim would likely exceed the policy limit and that they needed to act swiftly to get an offer out.  Gallardo-Pinedo argues that Aegis in bad faith delayed the settlement process, as Aegis did not tender its policy limit until May 2, 2018.  Doc. 29 at 4–5.  However, the undisputed evidence shows that Aegis promptly reached out to Gallardo-Pinedo well before May 2, 2018.  Between January 5 and May 2, Aegis reached out to Gallardo-Pinedo, or his legal representative, five times to request documentation of his damages.  *See* SUF Nos. 10–21.  Aegis never received a response.  *Id.*

Moreover, the undisputed evidence shows that Gallardo-Pinedo's earliest settlement demand to Aegis was dated April 25, 2018, more than five months following the accident on November 22, 2017.  *Id.* No. 23.  As noted above, this letter was addressed to the wrong zip code, and there is no evidence that Aegis received it before August 28, 2018.  *Id.* No. 25.  But even if Aegis had received it by mail shortly after April 25, 2018, Aegis made its offer to settle for its policy limit on May 2, 2018, only days later.  *Id.* No. 21.

Nor is there any basis on which a jury could find Aegis acted unreasonably in not making its settlement offer prior to May 2, 2018.  It is undisputed that neither Gallardo-Pinedo nor Cecilia Pinedo provided Aegis with medical documentation, despite Aegis's repeated

1 requests for such information. On November 24, 2017, just two days after Aegis learned of the
2 accident, Aegis sent a letter to Gallardo-Pinedo requesting information on the accident. SUF
3 No. 8. Afterwards, Aegis sent five additional letters requesting documentation of his medical
4 care and expenses. *Id.* Nos. 10, 11, 16, 17. Neither Gallardo-Pinedo nor Cecilia Pinedo
5 responded to these requests. *Id.*

6 Gallardo-Pinedo argues that medical documentation and bills were not necessary given
7 the evident seriousness of his injuries as reflected in the CHP report, which Aegis had
8 reviewed by January 5, 2018 and which noted that the vehicle was traveling an estimated 35
9 miles per hour and that Gallardo-Pinedo had suffered a "major skull fracture." Doc. 29 at 18–
10 19. However, while a trier of fact could reasonably find that Aegis knew that there was a
11 substantial likelihood that Gallardo-Pinedo's recovery would exceed his $15,000 policy limit,
12 the evidence does not support a finding that Aegis unreasonably delayed in extending the
13 settlement offer. Aegis did not act unreasonably in requesting medical records and bills to aid
14 it in evaluating a settlement offer. *See Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.*,
15 562 F. Supp. 3d 563, 572–73 (C.D. Cal. 2021) (granting summary judgment for insurer where,
16 despite having a police report and eight pages of medical records that indicated plaintiff was
17 paralyzed, insurer had no duty to accept a settlement demand without medical bills that
18 quantified the costs associated with plaintiff's injury); *Spradlin v. GEICO Indem. Co.*, No.
19 2:18-cv-10299-SVW-KES, 2019 WL 6481304, at *20 (C.D. Cal. Aug. 1, 2019) (granting
20 summary judgment for insurer because no reasonable insurer would have concluded that
21 "settling for the policy limit was the prudent choice" without corroborating information to
22 confirm medical expenses, even if it was clear that the claimant suffered a serious injury and
23 that its insured was at fault); *Reid*, 220 Cal. App. 4th at 277 ("Nothing in California law
24 supports the proposition that bad faith liability for failure to settle may attach if an insurer fails
25 to initiate settlement discussions, or offer its policy limits, as soon as an insured's liability in
26 excess of policy limits has become clear.").

27 Where it is clear to the insurer that there is a likelihood of a judgment exceeding the
28 policy limit, an insurer may well have a duty to accept a settlement offer for the policy limit

even when the insurer does not yet have full medical documentation of the claimant's injury. "[A]n insurer is [not] always permitted to wait to settle until it receives medical documentation to quantify the measure of damages incurred by the injured party." *Spradlin*, 2019 WL 6481304, at *21. But in cases finding bad faith by the insurer in such circumstances, the insurer *refused* a settlement offer. *See Integon Preferred Ins. Co. v. Saavedra*, No. CV 18-6689-GW(RAOx), 2020 WL 11627347, at *5 (C.D. Cal. May 28, 2020) (upholding jury verdict which found that insurer unreasonably failed to accept claimant's settlement offer where insurer knew claimant's injuries included bleeding in the brain, a broken clavicle, and a lacerated liver, likely exceeding policy limits). In contrast, Gallardo-Pinedo did not make any settlement demand until, at the earliest, Cecilia Pinedo's letter of April 25, 2018. And Aegis tendered its policy limit one week later, on May 2, 2018, in exchange for a release of its insured. In these circumstances, "no reasonable jury would find that [Aegis] acted unreasonably," *Spradlin*, 2019 WL 6481304, at *21, by seeking corroborating medical documentation prior to receiving the plaintiff's settlement demand, when Aegis then tendered its full policy limit within days of the plaintiff's demand letter.

Moreover, it is undisputed that Medi-Cal paid for all but $100 of Gallardo-Pinedo's treatment, and neither Gallardo-Pinedo nor Cecilia Pinedo ever provided Aegis with information on any Medi-Cal lien that, by statute, Aegis was required to protect. SUF Nos. 5, 35; Cal. Welf. & Inst. Code, §§ 14124.71, 14124.76; *L.Q. v. Cal. Hosp. Med. Ctr.*, 285 Cal. Rptr. 3d 93, 106 (Cal. Ct. App. 2021) ("To the extent . . . that the beneficiary recovers damages for past medical expenses from a third party as part of a settlement or judgment, those damages belong to the state, not to the beneficiary."). Cecilia Pinedo's three demand letters dated April 25, June 26, and July 12, all expressly demanded that Aegis's name only Gallardo-Pinedo on the payment check. Doc 24-6 at 85–86, 93–97. Gallardo-Pinedo argues that Cecilia Pinedo's demand was due to her lack of awareness of Aegis's statutory obligation to include lienholders in its settlement, but, regardless of her intent, the demand that Aegis settle the case without providing for the Medi-Cal lien was not reasonable. A settlement demand is not reasonable if it "involves an excess judgment or exposes insurers to claims from lienholders."

11

1    *Dorroh v. Deerbrook Ins. Co.*, 223 F. Supp. 3d 1081, 1091 (E.D. Cal. 2016) (citing *Coe v. State Farm Mut. Auto. Ins. Co.*, 66 Cal. App. 3d 981 (1977)).  There is no evidence of bad faith where Aegis refused to accept an unreasonable demand that would have exposed it to additional liability to a lienholder, when Aegis otherwise promptly tendered its full policy limit in exchange for a release of its insured.  *See Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 465 (2007) ("[W]hether a liability insurer's failure to accept a settlement offer constituted a breach of the implied covenant depends on whether that settlement offer was 'reasonable.'").

Gallardo-Pinedo also argues that Aegis's tender of the policy limit on May 2, 2018, without the requested medical bills or information on the Medi-Cal lien, demonstrates that Aegis did not need such information to settle Gallardo-Pinedo's claim.  Doc. 29 at 20.  That argument is unpersuasive.  Rather, Aegis's tender of the full policy limit, despite not having received a response to its repeated requests for medical records, is evidence of a good faith effort to resolve the dispute despite not having received all the information to which it was entitled.  Additionally, Aegis tendered its full policy limit over one year *before* Gallardo-Pinedo filed suit against Paz.  SUF No. 44; *cf. Hulett v. Farmers Ins. Exch.*, 10 Cal. App. 4th 1051, 1060 (1992) (finding that an insurer's decision to wait until a lawsuit was filed to offer the claimant's full policy limits supported an inference of bad faith).

Finally, Aegis's May 2, 2018 letter offering the $15,000 policy limit was sent one week after the date of Cecilia Pinedo's April 25, 2018 letter, which gave Aegis fifteen days to respond to the demand to "offer the maximum amount of money to [her] son for the total amount of insurance Mr. Paz has."  Doc. 24-6 at 93.  As noted above, Aegis did not receive the April 25, 2018 letter until August 28, 2018.  However, even if Aegis had received the April 25 letter shortly after it was mailed, its May 2, 2018 offer to settle for the full policy limit in exchange for a release was timely.  "When a liability insurer does timely tender its 'full policy limits' in an attempt to effectuate a reasonable settlement of its insured's liability, the insurer has acted in good faith *as a matter of law* because by offering the policy limits in exchange for a release, the insurer has done all within its power to effect a settlement."  *Graciano v. Mercury Gen. Corp.*,

231 Cal. App. 4th 414, 426 (2014) (emphasis added).  Here, it is undisputed that Aegis tendered its full policy limit within the fifteen-day deadline demanded by Cecilia Pinedo.  Doc. 29 at 21.

As there were "no other circumstances that raised a question of the insurer's good faith either before or after it tendered the full policy limits," the insurer did "all within its power to effect a settlement" and acted in good faith as a matter of law.  *Barickman v. Mercury Cas. Co.*, 2 Cal. App. 5th, 508, 520 (2016) (clarifying the scope of *Graciano*).  There is no evidence that Aegis acted in bad faith by not extending its settlement offer prior to May 2, 2018.  Aegis proactively and repeatedly reached out to both Paz and Gallardo-Pinedo after becoming apprised of the accident and its potential liability.  Aegis timely requested needed information, such as medical records and information on any Medi-Cal lien, and clearly informed Gallardo-Pinedo of the information it required to resolve his claim.  Doc. 24-6 at 63, 67, 82, 101–02; *see Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 888 (C.D. Cal. 2016) ("[A] reasonable offer must include enough time for the insurer to conduct an adequate investigation," and "if additional time is needed to investigate and assess an offer in good faith, the insurer should inform the claimant of the need for additional time, which may not be unreasonably withheld.") (internal citations omitted).  After Aegis's May 2, 2018 offer to settle for the full policy limit in exchange for a release, Aegis also provided Gallardo-Pinedo with updates on the status of his specific requests, such as proof of Paz's policy limits and whether Paz was acting within the scope of employment during the accident.  *See* SUF Nos. 34–44.

On this record, no reasonable jury could find that Aegis acted in bad faith or breached its duty of good faith and fair dealing.

///
///
///
///
///
///
///

### IV. Conclusion and Order

For the reasons explained above:

1. Aegis's motion for summary judgment, Doc. 24, is GRANTED;

2. The Clerk of Court is directed to enter judgment for defendant Aegis; and

3. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   June 13, 2025

_____
UNITED STATES DISTRICT JUDGE

14